OPINION
On June 29, 1995, appellee, the Stark County Department of Human Services, filed a complaint for permanent custody of Andrew Schuster born March 30, 1989 and Cory Schuster born July 30, 1991. The complaint alleged the children were dependent and abused. Mother of the children is appellant, Christine Schuster. Father of Andrew is Tom Page and father of Cory is Danny Gayhart.
On September 20, 1995, appellant stipulated to dependency. Appellee withdrew its complaint for permanent custody and received temporary custody of the children while appellant followed the case plan.
On April 24, 1996, appellee again filed for permanent custody. A hearing was held on October 30, 1996. On the morning of trial, appellee withdrew its complaint for permanent custody of Cory. The hearing proceeded for permanent custody of Andrew only. By judgment entry filed January 7, 1997, the trial court terminated appellant's parental rights. A best interests hearing was held on February 6, 1997. By judgment entry filed February 10, 1997, the trial court granted appellee permanent custody of Andrew.
Appellant filed a notice of appeal and this matter is now before this court for consideration. Assignment of error is as follows:
I
 THE DECISION FOR PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.
 I
Appellant claims the trial court's decision was against the manifest weight of the evidence. We disagree.
A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C. E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. Myers v. Garson (1993), 66 Ohio St.3d 610.
Appellant argues she cooperated fully with the case plan and it is not her behavior or parenting skills that was the problem but rather Andrew's behavioral disorder. It is undisputed Andrew is aggressive, combative and very angry. He is a handful wherever he lives, provokes fights and is willing "to go toe to toe" with just about anyone. T. at 11, 25. Andrew and Cory cannot be handled effectively together. T. at 15.
In its findings of fact of January 7, 1997, the trial court noted Andrew's behavior and the inability to have Andrew and Cory housed safely together:
 Andrew Fussel is the current caseworker from SCDHS and testified that he has developed the case plan with Christine to include housing, counseling, and supervised visitation. He told the Court that Christine lives in a duplex, that Andrew continues in counseling with Dr. Robin Tenner, and that he monitors supervised visits between Christine and her sons. He related that there may be some slight improvement in Christine's ability to interact with the children but that she continues to threaten and cannot cope with Andrew's lack of attention and his oppositional/defiant behavior. Mr. Fussel told the court that every known service has been tried with Christine but that Andrew's severe problems with anger and agressiveness (sic) toward his younger brother are beyond her capabilities to control. Mr. Fussel stated that Andrew has remained in the same foster home for the past year and that the foster parents are often challenged to maintain consistent consequences with Andrew's behavioral outbursts. It is Mr. Fussel's opinion that Andrew and Cory cannot live together with their mother without continued physical and, possibly, sexual abuse of Cory by Andrew.
 Dr. Robin Tenner testified that she has worked with Andrew for more than two years to resolve issues of anger management, aggression, attentional deficit hyperactive disorder, and sexual acting out. She emphasized that Andrew must have a structured lifestyle `every minute of the day.' Dr. Tenner emphasized that Andrew and his brother, Cory, together, are an `explosive situation' which should be expected to lead to agression (sic) and sexual acting out on Cory by Andrew. Dr. Tenner further related that Andrew has severe tantrums during which he trashes his room, then dares his foster parents to abuse him. She stated that he will provoke a fight with anyone and enjoys punching with his fists. Dr. Tenner further stated that Andrew is extremely jealous of his brother and that his rivalry with his brother is especially destructive.
Robin Tener, Ph.D., Andrew's counselor, testified Andrew has Oppositional Defiant Disorder and Attention Deficit Hyperactivity Disorder, and the "big issue" for him is anger management. T. at 10. Andrew has difficulty in all settings, appellant's home, foster family's home and school. T. at 10. Dr. Tener described her observations of the mother/child relationship as "very chaotic." T. at 11. Dr. Tener testified the children had been involved in sexual acting out with each other. T. at 11. Dr. Tener opined Andrew needed a "lifestyle where he knows exactly what's going to happen all the time" and consistency in rewards and punishments. T. at 13. Dr. Tener explained as follows:
 A. Uh, you know, it's, that he has, that he has, you know, chores and routines and that this is how, but his day is, is pretty much structured for him. If you leave anything to chance to Andrew, you know, it, it doesn't happen. He really needs to be directed, uh, in, in almost all of his daily tasks. Now obviously in a foster home we're trying to get him to function more independently and, and build trust and so forth, but, you know, his current caretaker needs to keep tabs on him all the time. Uh, because he, he still very easily gets sidetracked. He tends to be very provocative and jealous of other children that are in the house. Uh, he's very quick to anger. Very quick to use his fists and get into some kind of a punching argument when things aren't going his way. Will trash his room, you know, have, have very severe tantrums still. And, you know, although some of those things have improved, what, what is really I think helped him is the consistency of that, that caretaker. Uh, he will even do things such as, you know, dare his foster mother to abuse him. Dare her to hit him. And, uh, you know will get, uh, you know, toe to toe. He's done that with me in the office, you know, when he is not doing what, uh, uh, he's supposed to. So, you know, he's a, he's a kind of child who kind of begs a fight. And if a caretaker, you know, is prone to want to fight with him or becomes very, very frustrated with him, you know, you will have a, a physical altercation on your, on your hands. And he, he can hurt you and I think, uh, can hurt somebody else as well. So he's very tough. He's a very, very difficult child who really comes with his own, uh, comes with his own chaos, uh, to be very frank. And, and needs a situation that is very planned and very structured and, and not, uh, where nothing is left to chance, frankly.
T. at 13-14.
Dr. Tener further opined Cory would be the victim of Andrew's aggression. T. at 16.
Dee Davidson, appellant's counselor, testified she believes appellant could care for Andrew with ongoing counseling. T. at 33. Colleen Miller, a social worker with Goodwill Industries, testified appellant took the parenting skills training program twice but problems with discipline remained unresolved. T. at 58. This was illustrated by appellant's inability to discipline the children during supervised visitation. T. at 54. Appellant would speak critically and abrasively with the children. T. at 57. Appellant used harsh discipline and exhibited little patience with the children, and demonstrated poor decision making skills involving her clothes, partners, house guests and counseling. T. at 58-60.
Jennifer Schott, an employee with appellee, described one of the last supervised visits as "out of control" with appellant attempting to restrain Andrew and Andrew kicking, biting and punching appellant. T. at 85-86. Ms. Schott described appellant's home as "not pulled together." T. at 92. Appellant ran an unstructured and unsupervised home and let the children run wild. T. at 93. Prior to hearing, appellant's home was cluttered with boxes but inappropriate housing was no longer an issue. T. at 110. Andy Fussell, another employee with appellee, testified despite appellant's improvement in disciplining and handling the children, Andrew will not make it in the home and there has been an exhaustion of available services. T. at 116.
Even though there is contradictory testimony on the ability to return Andrew to the home with appellant and Cory, we are not permitted to subplant the trial court's determination on the credibility of witnesses with our own impressions. State v. Awan
(1986), 22 Ohio St.3d 120.
Upon review, we find sufficient credible evidence to support the trial court's decision to terminate appellant's parental rights and grant appellee permanent custody of Andrew.
The sole assignment of error is denied.
The judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is hereby affirmed.
By Farmer, P.J., Gwin, J. and Hoffman, J. concur.
 JUDGMENT ENTRY
CASE NO. 1997 CA 00039
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is affirmed.